This memorandum opinion was not selected for publication in the New Mexico Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**ANGELA HIGGINS,**

    Petitioner-Appellee,

**v.**                                                                 **No. 30,162**

**JESSE HIGGINS,**

    Respondent-Appellant.

**APPEAL FROM THE DISTRICT COURT OF SIERRA COUNTY**
**Kevin Sweazea, District Judge**

Angela Higgins
Coffeyville, KS

Pro Se Appellee

Thomas Kalm
Albuquerque, NM

for Appellant

### MEMORANDUM OPINION

**SUTIN, Judge.**

Respondent appeals from the district court's amended order denying his motion to reconsider, objections to the reports and recommendations, and the hearing officer's

recommendation, and from the district court's judgment on property equalization and attorney fees. We issued a notice of proposed summary disposition, proposing to affirm. Respondent has filed a memorandum in opposition and a motion to amend the docketing statement in response to our notice. We have considered the response, and remain unpersuaded that Respondent has demonstrated reversible error. The motion to amend the docketing statement does not seek to add new issues; rather, it provides more information than did the docketing statement regarding the same issues. The information provided in the motion to amend simply responds to the proposed analysis in our notice. We have considered all arguments made in the motion to amend the docketing statement and deny the motion as unnecessary.

In his docketing statement, Respondent listed ten issues. [DS 18-22] Our notice construed them to raise five discrete arguments. The response to our notice reorganizes the issues into the following four arguments. First, Respondent argues that his due process rights were violated because he was denied an opportunity to voice his objections to the district court prior to its decision to adopt the hearing officer's recommendations. [DS 18-19; MIO 4-7] Second, Respondent argues that the district court abused its discretion by ruling that it was in the best interest of the children to be relocated to Kansas with Petitioner, based on its failure to hold a hearing and make independent factual determinations and on the insufficiency of the

evidence to support the court's written findings and conclusions. [DS 21-22; MIO 7-18] Third, Respondent argues that he was improperly held in contempt for violating the district court's orders because there was insufficient evidence that he failed to comply with certain provisions and because he was unable to comply with the financial responsibility imposed on him. [DS 21; MIO 18-22] Lastly, Respondent argues that the district court abused its discretion by ordering him to pay Petitioner's attorney fees. [DS 21-22; MIO 22-26]

**Due Process**

Respondent contends that his due process rights were violated because he was denied an opportunity to voice his objections to the district court prior to its decision to adopt the hearing officer's recommendations. He also complains that the district court did not hold a hearing or exercise independent judgment before approving the hearing officer's recommendations, in violation of Rule 1-053.2 NMRA and *Buffington v. McGorty*, 2004-NMCA-092, ¶ 30, 136 N.M. 226, 96 P.3d 787. [DS 18-19; MIO 4-7]

Rule 1-053.2(F) states the following:

> Within thirty (30) days after the conclusion of the proceedings, the domestic relations hearing officer shall file and submit to the court for review and approval the hearing officer's recommendations, including proposed findings and conclusions, and shall serve each of the parties with a copy together with a notice that specific objections may be filed within ten (10) days after service of the recommendations.

3

The committee commentary to the rule explains that the purpose of the objections is to point out to the district court the disputed matters addressed by the recommendations. *See Buffington*, 2004-NMCA-092, ¶ 30 (holding that, prior to the 2006 amendment to Rule 1-053.2, due process required that the parties be given an opportunity before the district court to object to the hearing officer's recommendations).

Our notice stated that the record did not reveal to this Court that Respondent was denied the opportunity to object to the hearing officer's recommendations in a manner that has prejudiced him and that the docketing statement did not clarify the matter. [DS 18] The record indicates that the hearing officer made recommendations from the bench on August 21, 2007, and that Respondent's counsel failed to reduce the recommendations to writing as he was ordered to do and failed to file objections to those recommendations at that time. [RP 118 (¶¶ 5-7)] The record further indicates that the hearing officer reviewed proposed recommendations from both attorneys at a February 26, 2008, hearing and made corrections to conform to his oral recommendations. [RP 118 (¶ 9)] Respondent filed a motion to reconsider and objections to the hearing officer's recommendations on March 13, 2008. [RP 109-13] At this point, the district court had not yet filed a final decree in the proceedings. On November 25, 2008, the hearing officer filed another set of recommendations for the

final decree, which the district court approved and adopted. [RP 433-47] On August 12, 2009, the district court held a hearing on Respondent's objections to the hearing officer's recommendations and the GAL's recommendations, as well as on Respondent's motions to reconsider. [RP 756] The court denied the motions. [Id.]

Our notice explained that Respondent did not state why this process was deficient and how it prejudiced him. In response to our notice, Respondent asserts that the district court did not hold a hearing and that there was no opportunity for his objections to be heard. [MIO 4-5] Respondent does not directly address the process we detailed in this opinion, however, or our citations to the record, and he does not explain why the record reflects that the district court held a hearing. We will accept representations of the parties unless the record on appeal shows otherwise. *Cf. State v. Calanche*, 91 N.M. 390, 392, 574 P.2d 1018, 1020 (Ct. App. 1978). As we indicated in our notice, the record shows that the district court considered Respondent's objections and his motions to reconsider and held a hearing on his objections. [RP 756] Without any specific argument indicating why the record is incorrect, we accept the representations in the record. We must reject Respondent's unsupported assertion that the district court did not hold a hearing that reviewed the recommendations of the hearing officer and considered the objections of the parties.

To the extent that Respondent complains that the hearing on his objections was not held earlier or was inconsistent with proper procedure, he does not explain why the procedure was deficient and how he was prejudiced by the hearing held on his objections. *See Farmers, Inc. v. Dal Mach. & Fabricating, Inc.*, 111 N.M. 6, 8, 800 P.2d 1063, 1065 (1990) (stating that the appellate court presumes that the district court is correct and recognizing that the burden is on the appellant to clearly demonstrate that the lower court erred). "In the absence of prejudice, there is no reversible error." *State v. Fernandez*, 117 N.M. 673, 677, 875 P.2d 1104, 1108 (Ct. App. 1994). In response to our notice, Respondent complains that *Buffington* does not require a showing of prejudice. [MIO 4-5] We agree; *Buffington* requires a hearing to review the recommendations and consider the parties' objections. Because the record shows that a hearing was conducted, we question how, if there was error in the procedure, Respondent was prejudiced. The requisite prejudice to which our notice referred required a showing that had the procedure below been different in some specific way, then a specific result would not have occurred. *See In re Estate of Heeter*, 113 N.M. 691, 695, 831 P.2d 990, 994 (Ct. App. 1992) ("On appeal, error will not be corrected if it will not change the result."). As we stated in our notice, Respondent did not specify why the procedure below denied him an opportunity to object, or what objections he was unable to raise, which objections he would have made, what

6

evidence supports his objections, and why he believes he would have prevailed. *See Buffington*, 2004-NMCA-092, ¶ 31 ("The nature of the hearing and review to be conducted by the district court will depend upon the nature of the objections being considered.").

There were several hearings held and pleadings filed in which much of the subject matter of Respondent's objections was discussed. We do not see how the district court could have been unaware of the contested areas of the recommendations before concluding the process. For these reasons, it does not appear that Respondent was denied the right to object, and we disagree with Respondent's arguments that he was denied due process.

**Custody Ruling**

Respondent argues that the district court abused its discretion by ruling that it was in the best interest of the children to be relocated to Kansas with Petitioner, based on its failure to hold a hearing and make independent factual determinations and on the insufficiency of the evidence to support the court's written findings and conclusions. [DS 20-22; MIO 7-18]

As we have stated, the record shows that the district court held a hearing and it is within the court's discretion to adopt the recommendations of the hearing officer. *See Buffington*, 2004-NMCA-092, ¶ 31 ("After the hearing, the court may adopt the

hearing officer's recommendations, modify the recommendations, reject in whole or in part the recommendations, or receive further evidence or recommit the matter to the hearing officer with instructions."). There is no support for Respondent's contention that the district court's adoption of the hearing officer's recommendations is invalid or otherwise indicates that the court did not conduct an independent review. Therefore, we review the district court's findings of fact to determine whether they are supported by substantial evidence.

When determining the custody arrangement that is in the best interest of the children, the district court should consider the following factors:

    (1)    the wishes of the child's parent or parents as to his custody;

    (2)    the wishes of the child as to his custodian;

    (3)    the interaction and interrelationship of the child with his parents, his siblings and any other person who may significantly affect the child's best interest;

    (4)    the child's adjustment to his home, school and community; and

    (5)    the mental and physical health of all individuals involved.

NMSA 1978, § 40-4-9(A) (1977).

In the current case, the district court awarded the parents joint custody, except for decisions relating to the children's education, which were to be made by Petitioner, and it gave Petitioner primary physical custody of the children, permitting them to

relocate, from Truth or Consequences, New Mexico, to Kansas for every school year. [RP 438-40] Respondent was awarded custody of the children every spring break, summer break, Thanksgiving, Christmas in even-numbered years to include the entire school winter holiday, and half of the school winter holiday during odd-numbered years. [RP 440 (¶ 43)]

There is a presumption that joint custody is in the best interest of the children. NMSA 1978, § 40-4-9.1(A) (1999). In determining whether joint custody is in the best interest of the children, the district court was required to consider the following factors in addition to those set forth in Section 40-4-9.

> (1) whether the child has established a close relationship with each parent;

> (2) whether each parent is capable of providing adequate care for the child throughout each period of responsibility, including arranging for the child's care by others as needed;

> (3) whether each parent is willing to accept all responsibilities of parenting, including a willingness to accept care of the child at specified times and to relinquish care to the other parent at specified times;

> (4) whether the child can best maintain and strengthen a relationship with both parents through predictable, frequent contact and whether the child's development will profit from such involvement and influence from both parents;

> (5) whether each parent is able to allow the other to provide care without intrusion, that is, to respect the other's parental rights and responsibilities and right to privacy;

9

(6)  the suitability of a parenting plan for the implementation of joint custody, preferably, although not necessarily, one arrived at through parental agreement;

(7)  geographic distance between the parents' residences;

(8)  willingness or ability of the parents to communicate, cooperate or agree on issues regarding the child's needs; and

(9)  whether a judicial adjudication has been made in a prior or the present proceeding that either parent or other person seeking custody has engaged in one or more acts of domestic abuse against the child, a parent of the child or other household member.

Section 40-4-9.1(B).

"We will overturn the trial court's custody decision only for abuse of discretion, and we will uphold the court's findings if supported by substantial evidence. An abuse of discretion occurs when a ruling is clearly contrary to the logical conclusions demanded by the facts and circumstances of the case." *Grant v. Cumiford*, 2005-NMCA-058, ¶ 13, 137 N.M. 485, 112 P.3d 1142 (internal quotation marks and citations omitted).

"In accordance with the standard of review, when considering a claim of insufficiency of the evidence, the appellate court resolves all disputes of facts in favor of the successful party and indulges all reasonable inferences in support of the prevailing party." *Las Cruces Prof'l Fire Fighters v. City of Las Cruces*, 1997-NMCA-044, ¶ 12, 123 N.M. 329, 940 P.2d 177 (filed 1996). We disregard evidence

10

and inferences that are contrary to the district court's ruling. *See Weidler v. Big J Enters.*, 1998-NMCA-021, ¶ 30, 124 N.M. 591, 953 P.2d 1089 (filed 1997). "The question [for us] is not whether substantial evidence exists to support the opposite result, but rather whether such evidence supports the result reached." *Las Cruces Prof'l Fire Fighters*, 1997-NMCA-044, ¶ 12. "Substantial evidence is such relevant evidence that a reasonable mind would find adequate to support a conclusion." *Landavazo v. Sanchez*, 111 N.M. 137, 138, 802 P.2d 1283, 1284 (1990).

Our notice recognized that Respondent's docketing statement provided this Court with facts that are favorable only to his position and did not provide this Court with all the relevant information, including those facts that support the district court's ruling. Our notice pointed out evidence in the record that would support the district court's ruling. Respondent's memorandum in opposition to our notice substantially repeats favorable facts to his position and does not indicate that the facts to which our notice referred were incorrect. As we stated in our notice, the record suggests that evidence was presented that Respondent had made vulgar, abusive, and offensive comments to and about Petitioner in front of the children. [RP unnumbered 35, 72, 435-36] Respondent has exhibited "problem drinking" and that he drinks and drives. [RP unnumbered 35, 71, 436] Respondent has refused to support any counseling for Petitioner and the children during the last year the parties were separated. [RP 71-72,

11

76, 436 (¶ f)] Respondent was found in contempt of court for his failure to comply with the court's order instructing him not to consume alcohol when the children are in his physical custody, and instructing him to cooperate with Dr. Caplan to achieve a proper evaluation, and to pay for his services. [RP 86-88, 436 (¶ i)] Respondent also failed to pay attorney fees as was ordered by the court. [RP 436 (¶ ii)] Dr. Caplan characterized Respondent as exhibiting a "self-centered indifference to the welfare of others" and as "attention seeking." [RP 437 (¶ h)] Respondent exhibited controlling and manipulative behavior toward Petitioner and was viewed by the GAL as unsupportive and un-nurturing toward Petitioner, in a manner that may constitute "actual physical, verbal, mental and emotional abuse." [Id. (¶¶ i, j)]

Petitioner has a large, extended family in Kansas that is loving and supportive and willing and able to provide security, time, childcare, and tutoring to elevate the children to the higher academic standards of the schools in Kansas. [RP 439 (¶ 31)] Petitioner has no family in New Mexico, and the only person in New Mexico, Respondent's mother, lives in Silver City. [RP 439 (¶ 32)] Petitioner has a hostile relationship with Respondent's mother. [Id.] Petitioner expressed legitimate reasons for relocating to Kansas; including, better housing, better schools, and family support. [RP 439 (¶ 33)] The children expressed a clear preference to live with their mother and move to Kansas. [RP 438 (¶ 29)] Dr. Caplan reported that the children's bond

with Petitioner was stronger and that it is important for the children to maintain a bond with both parents. [RP 439 (¶¶ 35-36)] Dr. Caplan testified that, although he intensely dislikes relocation cases, it was in the best interest of the children that they live with their mother in Kansas. [RP 438 (¶27)] The GAL and the hearing officer agreed that it was in the best interest of the children to be in the primary physical custody of Petitioner in Kansas. [RP 439 (¶¶ 34, 38, 40)]

Although there was plenty of evidence indicating that Respondent has been a good father, as we have stated, it is not our role to reweigh the evidence and substitute our judgment for that of the district court. *See Las Cruces Prof'l Fire Fighters*, 1997-NMCA-044, ¶ 12. Viewing the evidence in the light most favorable to the district court's ruling, we hold that a reasonable mind would find this evidence adequate to support the custody arrangement. We see no abuse of discretion.

**Contempt Ruling and Attorney Fees**

Respondent argues that he was improperly held in contempt for violating the district court's orders because there was insufficient evidence that he failed to comply with certain provisions and because he was unable to comply with the financial responsibility imposed on him. [DS 21; MIO 18-22] The arguments in Respondent's memorandum in opposition are difficult to understand because he does not clearly explain why the district court ruled that he had violated orders of the court and does

13

not explain upon what evidence such rulings were based. He states that he should not have been held in contempt because he could not pay the fees he was ordered to pay; however, his analysis details the testimony about his alcohol use and other allegations he believed were false. [MIO 19-22] He seems to argue that because Petitioner did not substantially prevail below, he should not have been required to pay attorney fees.

Our notice explained that Respondent did not state what evidence he presented that he could not comply with the district court's orders or pay attorney fees. We stated it is not our responsibility to comb the record to find support for an appellant's contentions. *See Murken v. Solv-Ex Corp.*, 2005-NMCA-137, ¶ 14, 138 N.M. 653, 124 P.3d 1192 ("[W]e decline to review . . . arguments to the extent that we would have to comb the record to do so."); *In re Estate of Heeter*, 113 N.M. at 694, 831 P.2d at 993 ("This [C]ourt will not search the record to find evidence to support an appellant's claims.").

Also, we explained that it was not clear to this Court that fees and costs were awarded as a sanction, as opposed to a broader resolution based on the needs and resources of the parties, which is within the discretion of the district court. *See* NMSA 1978, § 40-4-7(A) (1997) ("The court may make an order, relative to the expenses of the proceeding, as will ensure either party an efficient preparation and presentation of his case."); *Garcia v. Jeantette*, 2004-NMCA-004, ¶ 19, 134 N.M. 776, 82 P.3d 947

(filed 2003) ("Our case law recognizes that the central purpose of an award of attorney fees under Section 40-4-7(A) is to remedy any financial disparity between the divorcing parties so that each may make an efficient and effective presentation of his or her claims in the underlying divorce case.").

We informed Respondent that in any response he may wish to file, he should explain what evidence he presented indicating that he was unable to comply with the orders of the district court, the evidence Petitioner presented, and the grounds upon which the district court ruled. Also, he should have explained why he believed the award was a sanction; why the district court's decision was without logic or reason, or clearly unable to be defended; why the sanction was inappropriate in light of the nature of the conduct and level of culpability found by the district court; why the district court's findings and decision were not supported by substantial evidence; and whether the district court considered alternatives to the sanctions ultimately imposed. *See Enriquez v. Cochran*, 1998-NMCA-157, ¶¶ 20-21, 126 N.M. 196, 967 P.2d 1136 (describing the factors an appellate court considers as to whether the district court abused its discretion in imposing sanctions).

In response to our notice, Respondent asserts again that he was unable to pay the costs of experts and the attorney fees, but does not explain what evidence he presented to support these assertions. [MIO 19-25] Instead of stating what evidence

15

was presented at the show cause hearing, Respondent simply directs this Court to the tape log of the hearing. [MIO 19] Again, we inform Respondent that it is not our responsibility to comb the record to discover facts that support his position. *See Murken*, 2005-NMCA-137, ¶ 14 ("[W]e decline to review . . . arguments to the extent that we would have to comb the record to do so."); *In re Estate of Heeter*, 113 N.M. at 694, 831 P.2d at 993 ("This [C]ourt will not search the record to find evidence to support an appellant's claims."). He provides this Court only with the facts favorable to his position and disregards indications in the record that he had disposable income, he admitted to drinking alcohol in violation of the court's order, and that he did not pay the costs of experts or attorney fees, in violation of the court's orders. [MIO 19-22, 23-25; RP 163-64, 168, 177-79, 192, 194]

As we stated in our notice, this Court has addressed the broad discretionary powers of the district court to resolve the expenses of domestic relations proceedings, an authority that we have characterized as "essential to the fair and orderly administration of justice in [such] matters." *Philipbar v. Philipbar*, 1999-NMCA-063, ¶ 10, 127 N.M. 341, 980 P.2d 1075. "In a dissolution of marriage proceeding the district court maintains jurisdiction over the property of the parties; it divides the property between the parties, and has full discretion to make orders relative to the expenses of the proceeding." *Id.*; *see* NMSA 1978, §§ 40-4-4 (1973), -7(A) (1997).

"The district court may also appoint experts and provide for their reasonable compensation." *Philipbar*, 1999-NMCA-063, ¶ 10; *see* Rule 11-706(A), (B) NMRA; NMSA 1978, § 40-4-8(A) (1993); *see also In re Adoption of Stailey*, 117 N.M. 199, 205, 870 P.2d 161, 167 ("The court is clothed with broad discretion under [Rule 11-706(B)] in apportioning among the parties the costs of an expert witness appointed by the court."). We also review the imposition of sanctions for abuse of discretion. *See Enriquez*, 1998-NMCA-157, ¶ 20.

It is still not clear to this Court that fees and costs were awarded as a sanction, and not as a broader resolution based on the needs and resources of the parties, and it is not clear that the costs and fees award, even if imposed as a sanction, constituted error. The allegations against Respondent regarding his drinking and his assets were conflicting, and Respondent did not describe the overall division of property and debt between the parties and explain why it was inequitable. These are disputes within the broad discretion of the district court to resolve, and Respondent has not clearly demonstrated error. *See Las Cruces Prof'l Fire Fighters*, 1997-NMCA-044, ¶ 12 (stating that it is not our role to "reweigh the evidence nor substitute our judgment for that of the fact finder"); *see also Arnold v. Arnold*, 2003-NMCA-114, ¶ 6, 134 N.M. 381, 77 P.3d 285 ("[T]he trial court is to divide community property equally and gives the court broad discretion in doing so." (internal quotation marks and citation

17

omitted)); *Buckingham v. Ryan*, 1998-NMCA-012, ¶ 10, 124 N.M. 498, 953 P.2d 33 (filed 1997) ("[W]hen there is a conflict in the testimony, we defer to the trier of fact."). In the absence of a showing of clear error and given the broad discretionary authority of the district court to assess the expenses of domestic relations litigation, we affirm the district court's finding of contempt and its award of costs and fees. *See Farmers, Inc.*, 111 N.M. at 8, 800 P.2d at 1065 (stating that the appellate court presumes that the district court is correct, and the burden is on the appellant to clearly demonstrate that the lower court erred); § 40-4-7(A); *Garcia*, 2004-NMCA-004, ¶ 19.

For the reasons discussed in this opinion and in our notice, we affirm the district court.

**IT IS SO ORDERED.**

_____
**JONATHAN B. SUTIN, Judge**

**WE CONCUR:**

_____
**MICHAEL E. VIGIL, Judge**

_____
**ROBERT E. ROBLES, Judge**